# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

JERRY MCGEE,

        Plaintiff,

        v.

ANDREW SAUL,
Acting Commissioner of Social Security,

        Defendant.

CAUSE NO.: 2:17-CV-337-HAB

## OPINION AND ORDER

Plaintiff Jerry McGee seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for disability insurance benefits and supplemental security income. Plaintiff alleges that he has been disabled since October 2013 due to central core syndrome, cervical spine stenosis, cervical radiculopathy, lumbar spine stenosis, leg weakness, shoulder pain, and asthma.

## BACKGROUND

### A.     Procedural History

On January 23, 2014, Plaintiff filed for disability insurance benefits and Supplemental Security Income, alleging that he had been disabled since October 25, 2013. The Commissioner denied Plaintiff's applications initially and upon reconsideration. An administrative hearing was held on May 6, 2016, at which Plaintiff and a vocational expert (VE) testified. An Administrative Law Judge (ALJ) issued a decision on July 21, 2016, finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's

request for review, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. This appeal followed.

## B.    Medical Evidence Summary

Plaintiff worked for many years as a tree trimmer. His symptoms began when he was cutting a tree with his arms positioned above his head. Plaintiff went to the emergency room on October 14, 2013, complaining of bilateral should and arm pain, swelling, and bilateral hand numbness. Shortly thereafter, he was diagnosed with central cord syndrome and cervical disc degeneration. An MRI showed significant spinal cord impingement at C5-6 and C6-7 that was consistent with central cord syndrome. On October 29, 2013, Plaintiff underwent emergency C3-4 discectomy and anterior fusion surgery. A cervical spine x-ray on October 29, 2013, showed moderate cervical spondylosis and post-operative changes at C3-4. At discharge on October 31, 2013, Plaintiff still had numbness and tingling in his feet. His left hand was weaker than his right hand, but it had improved since before surgery.

On November 14, 2013, Plaintiff had a post-operative visit with Dr. R. Filipowicz, who noted he had excellent strength in his arms. He was walking with a limp and his legs were still weaker. He still showed signs of spasticity. Dr. Filipowicz commented that he had a significant amount of stenosis that would likely get worse and he would most likely need more surgery. Dr. Filipowicz's December 17, 2013, notes reference good recovery, as well as significant lumbar spondylosis and foraminal involvement at multiple levels.

On October 7, 2014, Plaintiff attended a physical exam at the request of the Disability Determination Bureau. He had a cane but did not use it during the exam. Plaintiff complained of swelling in right arm and weakness of both arms. He complained of his right knee swelling and giving out, and of being off balance. On exam, he had bilateral positive Tinel's sign. His right grip was weak. The reflexes in his ankles were absent. He was found to have decreased range of motion in the lumbar spine, bilateral shoulders, and bilateral knees. Plaintiff did not have difficulty getting on and off exam table. His ability to squat and his tandem gait were normal.

On July 14, 2015, Plaintiff saw Dr. Maya. He complained of neck pain and reported that he could not turn his neck. He stated that he had not seen a surgeon because he did not have insurance. He was diagnosed with asthma and cervicalgia. On exam, he had a stiff neck with dorsiflexion and had pain with range of motion. (R. 437–39.) A cervical spine x-ray on July 29, 2015, showed prominent anterior osteophytes in the mid to lower cervical spine with associated slight loss of disc height at C6-7. It also showed the fusion at C3-4. (R. 443.)

On August 20, 2015, Plaintiff saw Dr. Filipowicz complaining of neck pain and numbness and tingling in his neck and lower back. It happened more when he was laying down at night. He reported that his pain had increased in his shoulders and he was having some gait dysfunction. He had no obvious gait disturbance, but he could not walk one foot in front of the other. He had decreased range of motion in his neck because of pain on rotation and extension. Moving his neck also increased the tingling in his hands.

His strength in his upper extremities was normal. The reflexes in his lower extremities were slightly diminished. (R. 394–95.)

On September 21, 2015, Plaintiff saw Dr. Filipowicz. He reported that he had pain in his neck that radiated into his shoulders and that his symptoms were worsening. An MRI showed that he had a significant amount of stenosis at C5-6 and C6-7 and that there were some changes in the cord. Additional surgery was discussed. (R. 381–83.) On October 19, 2015, Plaintiff saw Dr. Filipowicz. He complained of neck pain that radiated into his shoulders. Dr. Filipowicz commented that he had reviewed an MRI that showed Plaintiff had disease at C5-6 and C6-7. (R. 513.)

Dr. Maya saw Plaintiff on November 13, 2015. He reported pain with range of motion of the neck and tenderness with palpation of the cervical spine. He had pain with palpation of the lower cervical spine and trapezius. He had positive trigger points on his trapezius. His arm strength in his right arm was 3/5. In his left arm it was 4/5. His grip was 3/5 bilaterally. He had decreased range of motion with both shoulders and neck pain with range of motion of the shoulders. He had difficulty getting up from the seated position. He had a shuffling gait after getting up from a chair, but then it returned to a normal, albeit slow gait. He had to adjust his position numerous times due to neck pain. (R. 459–61.)

On November 17, 2015, Dr. Maya completed a medical source statement about Plaintiff's ability to sustain work related activities. Dr. Maya noted that Plaintiff had constant pain, numbness and tingling of the hands, loss of muscle mass, and increased weakness of upper extremities. He had decreased range of motion in the cervical spine,

reduced grip strength, impaired sleep, tenderness, and trigger points. His pain often interfered with his attention and concentration due to its severity. He should sit no more than one hour and would need to have the opportunity to walk about for less than fifteen minutes during that hour of sitting. He could sit up to five hours in a work day. Plaintiff could stand or walk about for less than fifteen minutes before needing to sit or lie down. He would need to sit for less than fifteen before returning to standing or walking about. He could stand or walk for three hours in a work day. Dr. Maya opined that Plaintiff could lift and carry up to ten pounds frequently and twenty pounds occasionally. He should never stoop, look down at a table or desk (forward flexion of the neck), or look upward towards the ceiling (backward flexion). He should only occasionally rotate his neck. He could use his hands only occasionally for reaching or handling. Dr. Maya stated that he needed a cane for walking and standing on all surfaces. According to Dr. Maya, Plaintiff had good and bad days and would likely miss more than three days a month. (R. 445–52.)

Plaintiff saw Dr. Filipowicz on January 6, 2016, reporting that he had constant neck pain that he rated at a level 7 out of 10. His pain radiated from his neck down into his shoulders and his fingers were numb and tingling. He was having headaches and neck pain. Exam showed reasonable strength in his arme, but significant headaches and neck pain. Plaintiff had tingling in both fingers and at times his arm would become weak. A repeat MRI was ordered. Dr. Filipowicz noted that Plaintiff would most likely need surgery at C5-7. (R. 506.)

On February 17, 2016, Plaintiff saw Dr. Filipowicz about his neck pain and shoulder pain. Dr. Filipowicz noted that Plaintiff had stenosis throughout the whole spine. Plaintiff noted that he wanted to maintain conservative management for now and not proceed with the surgery, but it might be required in the future. (R. 499.)

**C.       Plaintiff's Hearing Testimony**

Plaintiff testified that he stopped working because he could no longer raise his arms. After surgery, he returned to work at the tree trimming company, but only in the shop and only until the season ended. In the shop position, he was allowed to sit and stand at will.

Plaintiff stated that he could no longer work due to numbness in his hands and legs, constant pain in his neck and shoulders, and impaired balance. He could sit for about an hour before having to move around, but his neck would hurt. He might be able to stand for 30 to 40 minutes. Plaintiff testified that he could only walk one block before he would need to sit down. He loses his balance and falls an average of three times per month. The neck pain is severe, and requires that he alternate between laying down, standing up, and sitting. His most comfortable position is laying down, which he does for about four hours a day between the hours of 8:00 am and 5:00 pm. The pain radiates into his shoulders and hands.

Plaintiff testified that he dropped items, but that he could lift between 15 and 20 pounds. Plaintiff had a four-point cane at the hearing. He first used a cane after his surgery. He testified that he used the cane every day. Plaintiff stated that he did not elect to have a second surgery after Dr. Filipowicz told him he would not be able to turn his

head. Plaintiff cannot look up due to the pain it would cause in his neck. Movement from side to side it also restricted.

## ANALYSIS

**A.  Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece

of evidence in the record, she "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**B.     Analysis Under the Social Security Act**

To qualify for disability insurance benefits, a claimant must be "disabled" under the Social Security Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).[1] To determine disability, the ALJ makes a five-step inquiry: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and

---

[1] The Court will cite to the statutory and regulatory provisions for Disability Insurance Benefits without including the parallel statutory and regulatory provisions for Supplemental Security Income.

(5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

The ALJ followed this five-step analysis. At step one, the ALJ found that Plaintiff engaged in substantial gainful activity (SGA) from April 1, 2015, to September 30, 2015, but that there had also been a continuous twelve-month period during which he did not engage in SGA.

At step two, the ALJ identified that Plaintiff suffered from severe impairments of degenerative disc disease of the lumbar and cervical, status post fusion, and osteoarthritis. The ALJ considered Plaintiff's asthma and Hepatitis as non-severe. However, none of his impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments.

The ALJ next determined that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently. Plaintiff could sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday, with normal breaks. Plaintiff could frequently climb stairs and ramps, but only occasionally climb ladders, ropes, and scaffolds. Plaintiff could frequently balance, stoop, kneel, crouch, and crawl. Plaintiff was limited to frequent, but not constant handling and fingering with his right, non-dominant upper extremity. Plaintiff was to avoid extreme cold as well as concentrated exposure to vibration and unprotected heights.

The ALJ reasoned that the RFC was appropriate because no greater or additional limitations were justified by the medical evidence and Plaintiff's complaints were not

entirely consistent with the record. The ALJ noted Plaintiff's history of musculoskeletal problems in October 2013, and that he "improved greatly after" undergoing an anterior cervical discectomy and fusion at the C3-C4 level. (R. 35.) He acknowledged that Plaintiff seemed to have "relapsed somewhat" and that his "records document some inconsistent clinical signs" but thought that the "record as a whole suggests that he can perform work." (*Id.*) In making this determination, the ALJ noted that Plaintiff generally does not appear to be in acute distress, that although prescribed with a cane after his surgery and sometimes walked with a poor gait, he also demonstrated the ability to ambulate normally without it. The ALJ cited intermittent loss of strength. He found it "[p]erhaps most notabl[e]," that Plaintiff "returned to work at substantial gainful activity level for six months for a tree trimming company. Furthermore, [Plaintiff] testified that he only stopped performing this work when the job was over, not due to any impairment." (*Id.*)

In arriving at the RFC, the ALJ also considered Plaintiff's statement about his own limitations but found that they were not entirely consistent with the record as whole. With respect to his need for a cane, the ALJ again cited the portions of the record where Plaintiff ambulated without an assistive device, including his consultative examination. He also noted that, despite Plaintiff's reports of pain, treatment notes cited that he did not appear to be in acute distress. The ALJ noted Plaintiff's brief return to work, and his testimony that he would do that job again if his prior employer offered it.

The ALJ considered the opinion evidence, and assigned considerable weight to the opinions of the State agency medical consultants because they were "consistent with the record, which indicates the claimant has neck and back problems, but improved after

surgery and successfully worked for a tree trimming company." (R. 36.) The ALJ also discussed Dr. Filipowicz's December 17, 2013, opinion, and Dr. Maya's Medical Source Statement. However, he only assigned little weight to the latter.

At step four, the ALJ concluded that Plaintiff could not return to his past relevant work as a tree trimmer and finisher. After considering testimony from the VE, the ALJ moved to step five to find that there was a significant number of jobs in the national economy that Plaintiff could perform. As such, the ALJ concluded that Plaintiff was not disabled from October 25, 2013, through the date of his decision.

C.     **RFC Assessment**

Although listed separately, Plaintiff's arguments of error all relate to or impact the RFC determination in some way. Plaintiff argues that the ALJ's determination that Plaintiff engaged in SGA after his surgery is not supported by substantial evidence and is contrary to law. Additionally, he claims that the analysis of his need for an assistive device is flawed, as is the ALJ's assessment of the weight afforded to the medical opinions. Plaintiff also separately attacks the RFC, arguing that it does not reflect all the limitations that are supported in the record, such as limitations in upper extremity handling or fingering, or the need for a sit/stand option.

The RFC measures what work-related activities a claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). A claimant's RFC must be based upon the medical evidence in the record and other evidence, such as testimony by the claimant or his friends and family. 20 C.F.R. § 404.1545(a)(3). The ALJ need not discuss every piece of evidence, but must logically connect the evidence to the ALJ's

conclusions so that the court can provide meaningful review. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). In making that determination, the ALJ must decide which treating and examining doctors' opinions should receive weight, and explain the reasons for that finding. 20 C.F.R. § 404.1527(d), (f). Additionally, the ALJ's RFC assessment must contain a narrative discussion describing how the evidence supports the ALJ's conclusions and explaining why any medical source opinion was not adopted if the ALJ's RFC assessment conflicts with such an opinion. SSR 96–8p, 1996 WL 374184, at **5, 7; *accord Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

"RFC determinations are inherently intertwined with matters of credibility." *Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011). In assessing credibility, the ALJ must also follow the requirements of Social Security Ruling ("SSR") 96–7p. *Brindisi*, 315 F.3d at 787. Among other things, SSR 96–7p requires ALJs to consider the entire case record when evaluating an individual's credibility. 1996 WL 374186, at *4. Factors that should be considered include the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, the types of treatment received, any medications taken, and functional limitations. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir.2006). Further, when evaluating symptoms of pain, SSR 96–7p also provides:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

*Id.* at *1.

*1.      Work Performed After Alleged Onset Date*

The ALJ found that the work Plaintiff performed for the tree trimming company after his surgery was SGA. The ALJ reasoned that Plaintiff did not describe the work as accommodated, and that he only stopped when the job ended due to the seasonal nature of the tree trimming business.

The Court finds that the ALJ failed to address important aspects of that work. Plaintiff testified that when he worked in the shop, he could alternate between sitting and standing at will. (R. 50, 66.) The employer completed a questionnaire about the job, stating that it granted special considerations to allow Plaintiff to work, which included fewer and easier duties, less hours, more rest periods, and frequent absences. (R. 243.) The employer advised that Plaintiff needed a cane at all times.

The record shows that when Plaintiff could no longer perform his work as a tree trimmer, his employer created a position for him. When transferring Plaintiff to the position, the employer knew that it would only last about five to six months before the season ended. The employer noted that Plaintiff was frequently absent and that he needed a cane. The employer did not call Plaintiff back to work when the season resumed. Whatever the ALJ concluded about these aspects of the work is unknown because the ALJ does not mention them. Failure to discuss these factors is error. *See Indoranto*, 374 F.3d at 474 (the ALJ "must confront the evidence that does not support his conclusion and explain why it was rejected."); *Diaz*, 55 F.3d at 307 ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion").

Further, the ALJ's findings with respect to this work were pertinent to many of his findings. It is mentioned as support for the conclusion that the record, as whole, suggests that Plaintiff can perform work. (R. 35.) The ALJ also cited the job as one of the factors he considered to conclude that Plaintiff's statements about his limitations were not "entirely consistent with the record." (R. 36.) Finally, the ALJ included Plaintiff's "successful[] work for a tree trimming company" as one of the grounds for concluding that the opinion of a State agency consultant was consistent with the record and thus entitled to considerable weight. (*Id.*)

Based on the foregoing, the Court cannot conclude that the ALJ's discussion of the work Plaintiff performed after his surgery was a harmless error.

## 2.     *Use of Assistive Device*

"A medically required hand-held assistive device, such as a cane, must be considered as part of the RFC analysis." *Caster v. Colvin*, No. 115CV01859JMSMPB, 2016 WL 4206000, at *3 (S.D. Ind. Aug. 10, 2016) (citing *Tripp v. Astrue*, 489 Fed. App'x 951, 955 (7th Cir. 2012)). The ALJ's RFC did not include an assistive device restriction. Rather, it required that he stand and/or walk for a total of six hours in a workday, with normal breaks. He could also frequently climb stairs and ramps, as well as balance, stoop, kneel, crouch, and crawl. This is in direct contradiction to Dr. Maya's assessment that a hand-held assistive device was medically required to aid Plaintiff in both walking and standing on all surfaces. (R. 450.)

The ALJ's basis for discounting this portion of the Dr. Maya's opinion is problematic. The ALJ noted that Plaintiff did not use an assistive device during his State

agency consultative examination. (R. 36.) In addition, Dr. Maya herself noted that Plaintiff ambulated with normal, if slow gait.

The last comment is a reference to observations Dr. Maya made during an exam conducted on November 13, 2015, the same date Dr. Maya opined that a cane was medically necessary. Given the timing of the observation with the opinion, the ALJ appears to be interpreting the doctor's observation differently than the doctor herself did. In addition, the ALJ's recitation of the observation omits Dr. Maya's finding that, before Plaintiff was able to ambulate normally, albeit slowly, he had difficulty getting up from a chair and had a shuffling gait initially after standing. (R. 460.) Moreover, he appears to base a rejection of the cane requirement on a limited observation in a controlled environment. Even when one also takes into account the consultative exam, it was conducted more than a year before Dr. Maya offered her opinion. An ALJ "may not selectively consider medical reports, especially those of treating physicians" nor can he "address mere portions of a doctor's report." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

The Court does not find that the ALJ's decision adequately explains the rationale for discounting Dr. Maya's opinion regarding Plaintiff's need for an assistive device. The contrary record being notations to his ability to ambulate during a consultative exam conducted a year earlier, and an incomplete statement of an observation of his gait during Dr. Maya's exam. Additionally, Plaintiff testified that he needed a cane every day, and one of the main reasons for rejecting this was, again, the consultative exam as well as other observations in examining rooms. Much like an ALJ cannot ignore limiting

qualifications attached to activities of daily living, *see Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009), an ALJ cannot ignore the limited nature of ambulating in an office setting, such as when it is done slowly and after shuffling. Nor should an ALJ place undue weight on a claimant's ability to ambulate for the brief periods of time that are required to undergo an examination. Even the listing related to "Major Dysfunction of a Joint," states that "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

### 3.  *Upper Extremity Handling or Fingering and Sit/Stand Option*

SSR 96-8p details the requirements of the ALJ's RFC analysis:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a logical bridge between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (citation omitted). ALJs must explain how they reach conclusions about a claimant's physical capacities. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "[A]lthough the ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only

the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Finally, "[a] decision that lacks adequate discussion of the issues will be remanded." *Id.* at 1121.

Plaintiff testified that he has constant tingling in his hands and drops things an average of three times per month. The medical records reveal intermittent loss of grip strength. Under the RFC, Plaintiff would be limited to frequent, but not constant, handling and fingering with his right, non-dominant upper extremity. There was no restriction for his left upper extremity. The court cannot find that the ALJ's determination that Plaintiff was limited to frequent handling and fingering with his right, but not his left hand, to be supported by substantial evidence. *See Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012) (reiterating that the ALJ must set forth a supportable record basis for the functional capacity finding).

The Plaintiff also testified that he needed to alternate between sitting, standing, and laying down due to his pain. (R. 53-54.) In response to specific questions from the ALJ, Plaintiff stated that he would have to sit and stand every hour throughout the day. (R. 69–70.) However, if the pain in his neck, which he described as constant, got too bad, he would have to take medication that made him drowsy and might have to lay down. Dr. Maya's opinion also addressed Plaintiff's need to shift postural positions.

During the hearing, when the ALJ's hypothetical to the vocational expert included a sit/stand option whereby Plaintiff would be permitted to alternate between sitting or standing, without maintaining the same position for more than thirty minutes, no jobs existed at the light exertional level. In his written decision, the ALJ did not explicitly

address the sit/stand option in arriving at the RFC. While he discounted Plaintiff's statements generally as not consistent with the record as a whole, and also discounted Dr. Maya's opinion for the same reasons, he did not provide a logical bridge between the evidence and his conclusion and thus, this court cannot "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

The Court is left to guess that the ALJ was referring to the record as set forth in the preceding paragraph when he found that Plaintiff's statements about his limitations were not consistent with the record. But that paragraph highlights "inconsistent clinical signs." (R. 35.) The inconsistent clinical signs are derived from examinations and observations made during vastly different periods of times. The ALJ's logic behind accepting the least restrictive rather than more limiting restrictions appears to be heavily tied to the fact that Plaintiff had a period of improvement after his surgery and worked for his former employer. For reasons explained above, the assessment of that work was not complete and does not represent an accurate and logical bridge to the conclusion that the Plaintiff did not have more severe limitations than those represented in the RFC.

Additionally, the ALJ noted that Plaintiff "generally does not appear to be in acute distress." (R. 35.) The ALJ did not explain how failing to present in "acute distress" during an exam is inconsistent with complaints of pain that would require a sit/stand option while performing the duties of full-time employment. Nor did he explain how the no acute distress notations otherwise show that Plaintiff can sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday.

The Court finds that remand is necessary because the ALJ has not adequately explained how he reached his conclusions about Plaintiff's physical capacities.

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS the final decision of the Commissioner.

SO ORDERED on July 22, 2019.

 s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT